AUTO OWNERS INSURANCE COMPA-
NY, a Michigan Corporation,
Plaintiff-Appellee,

v.

John David BASS and Gloria Jean Bass,
Defendants-Appellants.

No. 80–7741.

United States Court of Appeals,
Eleventh Circuit.

Sept. 1, 1982.

Hornsby & Schmitt, Steven F. Schmitt, Tallassee, Ala., for defendants-appellants.

Lloyd, Ennis & Lloyd, John T. Ennis, Sr., Birmingham, Ala., for plaintiff-appellee.

Before GODBOLD, Chief Judge, MERRITT * and HENDERSON, Circuit Judges.

GODBOLD, Chief Judge:

This is an Alabama diversity suit by Auto Owners Insurance Company against its insureds John David Bass and Gloria Jean Bass seeking to recover amounts it had paid to loss payees for a fire loss on the Bass home and also claiming punitive damages for fraud by the Basses. The precise allegations are significant and will be discussed later in this opinion, but, described in general terms, Auto Owners asserted that John Bass intentionally burned the home and made false and fraudulent claims and statements concerning both the fire and the losses incurred. It charged that Gloria knew of John's setting the fire and participated in false swearing concerning the fire and the loss. John and Gloria counterclaimed for amounts allegedly still owing under the policy. Following a trial in which John appeared pro se for himself and his wife, a jury found for Auto Owners and awarded $82,239 compensatory damages and $50,000 punitive damages. We affirm the judgment against John and reverse the judgment as to Gloria.

## I. The defective verdict

The general jury verdict read:

We, the Jury, find for the plaintiff and award $82,239.22 compensatory damages and $50,000.00 punitive damages.

This the 19th day of August, 1980.

There were no special interrogatories. The court entered judgment as follows:

It is hereby the Finding and Judgment of this Court that John David Bass and Gloria Jean Bass did commit willful and malicious fraud against the Plaintiff, Auto-Owners' Insurance Company. It is hereby

ORDERED ADJUDGED and DECREED as follows:

The Defendants shall pay to Plaintiff the sum of $82,239.22 plus six percent interest from the date of this Judgment in compensatory damages. The Defendants shall also pay to Plaintiff the additional sum of $50,000.00 plus six percent interest from the date of this Judgment in punitive damages with costs assessed against the Defendants.

No one objected to the form of the verdict, or the proposed forms submitted to the jury, or the form of the judgment. On appeal the defendants contend the judgment should be set aside and a new trial granted because it is based on a verdict *for* the plaintiff but *against* no one. Unquestionably the verdict is defective. If a verdict is so ambiguous a reasonable person cannot determine the jury's intent the verdict cannot stand. *See generally Denham v. Yancey*, 19 Ala.App. 45, 95 So. 201 (1922).

[T]he sufficiency of a verdict, reasonably interpreted as to its language, depends upon it being capable of definiteness when referred to the pleadings and papers in the case, the pertinent entries, and under the interpretation of the law given by the court to the jury.

In *Hopkins v. Duggar*, 204 Ala. 626, 628, 87 So. 103, 104, Mr. Justice Sayre observed:

"The real question is whether the verdict was not hopelessly defective and so afforded no proper basis for the judgment.

* Honorable Gilbert S. Merritt, U. S. Circuit Judge for the Sixth Circuit, sitting by designa- tion.

This point was not raised in the trial court. It is raised now for the first time. In order that the objection should avail it is necessary that the judgment be found to be wholly void. Intendments are indulged in favor of judgments."

Was, then, the verdict rendered void, under the issues of fact submitted by the court and instructions interpreting the law having application thereto, or was it definite and complete when referred to the issues submitted, to support the judgment entered thereon?

*Penney v. State*, 229 Ala. 36, 155 So. 576, 578 (1934).

[W]here the language of judgments, or verdicts can be reasonably interpreted by reference to the pleadings and papers in the case, and the instructions of the court, then on such basis intendments are indulged in favor of judgments. The real question is whether the verdict was hopelessly defective thereby affording no proper basis for a judgment.

*Reynolds Brothers Lumber Co. v. W. S. Newell Construction Co.*, 284 Ala. 352, 224 So.2d 899, 902 (1969).

One of the few federal cases is *Moore v. Harjo*, 144 F.2d 318, 321 (10th Cir. 1944) where the court said:

Where a judgment or decree is ambiguous or obscure, and fails to express the final determination of the court with clarity or accuracy, reference may be had to the pleadings, the verdict, the findings, and the entire record for the purpose of ascertaining what was determined.

We need not pause over the argument that the verdict can have no effect because it does not say "against defendants" (or a named defendant). The verdict was intended to be against some one or more persons. John and Gloria were the only defendants and the only persons against whom the damages referred to in the verdict could be awarded. The question rather is whether the verdict can be interpreted reasonably and with sufficient certainty as being against both John and Gloria, or against only one of them, and if one which one. In pursuit of this inquiry we turn to examination of the pleadings, the evidence and events at the trial, and the jury instructions.

The complaint alleged that Auto Owners issued a policy to the defendants on their home. It charged that *John* committed acts of fraud or false swearing by:

(a) deliberately causing an incendiary fire in their dwelling with intent to defraud;

(b) filing a false and fraudulent inventory;

(c) willfully concealing material facts about the contents of the home and the cause of the fire;

(d) falsely swearing to material facts in a statement given the company.

It charged *Gloria* knew or should have known[1] of John's fraudulent conduct or false swearing with intent to defraud the company. Finally, it alleged that as a direct and proximate result of the fraudulent conduct of the defendants the plaintiff paid fire loss proceeds to two loss payees.

The pretrial order restated plaintiff's position to be: that *John*, with the knowledge of Gloria, set fire to the house; that *both* committed fraud in causing the fire to be set; alternatively, as to *Gloria*, if she had no knowledge of a plan to burn the house, she conspired to conceal from the insurance company the facts concerning the loss.

We have read the record. There was sufficient evidence to submit to the jury the issue of liability of Gloria on the basis that she knew of John's setting the fire. She was present at the home with John and her children when the fire occurred during early morning hours. She was dressed when she escaped from the house. There was some inconsistencies in her stories about removal of items from the house. Also the evidence permitted the jury to infer that she assisted in concealing facts on the cause of the fire and the extent of loss. Thus the jury *could* have found her liable. This is a

---

1. Arguably the motion to dismiss should have been granted as to the "should have known" allegation, but this issue was not raised on appeal.

long way from saying with any degree of certainty that a verdict against her was what the jury had in mind.

John was the primary actor throughout and Auto Owners' primary target at trial. There was no direct evidence of who, if anyone, set the fire. Experts testified that they found evidence that an accelerant—gasoline or a similar means—had been used, and they found other evidence that the fire had been set. Much of the trial was devoted to testimony concerning the family's precarious financial position. Mortgages on the house were in default. John was being pressed for payments. He was overdrawn in his bank accounts, and he was earnestly seeking money. The fire occurred April 17, 1979. On March 12, 1979, John had increased the coverage on the dwelling from $84,000 to $90,000, which increased other coverages under the homeowner's policy as well. Auto Owners' stated theory was that John set the fire. It made no contention that Gloria set it (beyond a single statement in closing argument, discussed below). The inventory of personal property destroyed was prepared by John; Gloria stated that from time to time she told him of items that she had remembered that should be included. The complex financial dealings preceding the fire were carried on by John.

In approximately an hour of oral argument Auto Owners examined minutely John's affairs and conduct before, during and after the fire, and connected up its proof to every theory of liability against him for both compensatory and punitive damages. During this hour there was but a single reference to alleged liability of Gloria. Counsel said "John Bass and Gloria Jean Bass burned that house down."

We have considered the jury instructions not for correctness, because there was no objection to them, but to see if they assist in resolving the ambiguity of the verdict. Insofar as intent of the jury to subject Gloria to judgment, they contribute no certainty to the uncertain verdict. The instructions are a confusing mixture of language concerning liability of the husband, liability of the defendant (singular), and liability of the defendants (plural) (emphasis is added throughout):

One of the things that the Auto Owners claim is that *one or both of the insured* with actual intent to deceive or to increase the loss included some items in their proof of loss additional to those actually destroyed by the fire in that proof of loss and that the policy is voided thereby. And I charge you that if an insured with actual intent to deceive or to increase the loss does include items additional to those items actually destroyed by fire in his proof of loss, then the policy is voided and the defendant may not recover any proceeds under the policy and the plaintiff should recover its actual damages claimed which—excuse me, its actual damages which approximately resulted from the defendants' said acts or actions.

\* \* \* \* \* \*

Another aspect of the case, which the insurance company says occurred, is that *the defendant* deliberately and with intent to defraud set fire to *his* own house for the purpose of collecting under *his* policy. And the law is that if you find by a preponderance of the evidence that *the defendant* wilfully set the fire which caused the destruction of *his home and car*, you must find for the insurance company and award damages in an amount that the preponderance of the evidence shows the insurance company paid out of the investigation, the payment of mortgages and the other items of expenses that would not have been incurred but for the said act of the *defendants*.

\* \* \* \* \* \*

Now, in this case the insurance company has sought not only its actual damages, which it says resulted approximately from the wrongful acts of *Mr. and Mrs. Bass*, it claims punitive damages of fifty thousand dollars. That is in addition to actual damages. In order to award punitive damages you must find that *the defendant* acted maliciously, wilfully, or with reckless disregard for the rights of others or that *he or she* made false state-

ments knowingly and with the intent to cheat. Now, the intentional burning of a dwelling with intent to defraud an insurance company is by law a malicious and wrongful act with reckless or wanton disregard for the rights of others. If you find that *the defendant* committed arson by deliberately burning *his house*, you should award actual damages and you may award punitive damages to the insurance company. And if you feel the evidence shows by a preponderance of it, a wilful and wrongful act as I have described to you *by Mr. Bass and Mrs. Bass*, you may include in your award an amount of money for punitive damages which you feel with [sic] adequately punish *the wrongdoer* and set an example to others who might be inclined to do likewise.

The trial court instructed as follows on the alternate forms of verdict:

The first of them is a proposed jury verdict for the plaintiff insurance company. "We the jury find the plaintiff—excuse me—find for the plaintiff and award blank dollars compensatory damages." Now, that is the amount that will compensate the insurance company for whatever damages occurred to it *because of a wrongful act if any by the Basses.* "And blank dollars punitive damages." The punitive damages are the damages to punish *the Basses* for the wrongful act under the circumstances that I have described to you if *they* committed any such wrongful act. I will go back over: "We the jury find for the plaintiff and award blank dollars punitive damages. This the blank day of August, nineteen eighty." Add a line here under that line, foreperson. You will go back to the jury room and select one of your members to act as your foreperson. That person will preside over your deliberations and will be your spokesman here in court. [Second,] [n]ow, if on the other hand you find in favor of *the defendant* in this case on *their* claim on the policy. If you find that *they* bona fidely, as I have described to you, took out this insurance policy and *they* had nothing to do with setting this

fire, as I have described it, then you would enter a verdict, "We the jury find for *the defendants* and award blank dollars compensatory damages," bear in mind they do not seek punitive damages, "this the blank day of August, nineteen eighty." And a place for the foreperson. The foreperson will sign the verdict that you may enter and will date it and will fill in the amount of damages. Now, I remember when I was a student of law, considered myself one, I had a little trouble at times remembering which was the plaintiff and which was the defendant. You will notice that up here at the top of the name of the case is set out and it says the Auto Insurance—Auto Owners Insurance Company, plaintiff, and John David Bass and Gloria Jean Bass, *defendants*, so you could always look up there and solve any problem may have there. [Third] the last possible verdict is that you will find that neither the plaintiff nor *the defendant* proved its right to recover from the other side; the parties will be left as they are. In that event you may enter the verdict, "We the jury find neither for the plaintiff nor for *the defendants.* This the blank day of August, nineteen eighty."

Considering all of these circumstances we have outlined—the allegations as further developed in the pretrial order, the evidence, oral argument, and the instructions to the jury, there can be no reasonable doubt that the jury intended to assess compensatory and punitive damages against the principal actor John. But it cannot be said with any degree of certainty that the verdict was also intended to reach Gloria, who was not a central actor and was only a secondary target at trial. Plaintiff's brief devotes a single page to the matter of the defective verdict, and makes only the points that John and Gloria could be held jointly and severally liable as concurrent tortfeasors and that the evidence was sufficient to support a verdict against both of them. Both statements are correct, but neither addresses the point in issue.

## II. Other points

 Remarks by Auto Owners' counsel made to the jury in closing argument, not

objected to, were not so improper and prejudicial to require reversal. A comment on defendants' failure to call a fire expert who had been employed by their first attorney was not error at all. Generally, counsel in a civil trial may comment on the failure of a party to call an available witness whose testimony the party would naturally be expected to produce if favorable to him. *United States v. Certain Land in City of Fort Worth, Texas,* 414 F.2d 1026, 1028 (5th Cir. 1969). The second comment, that Mr. Bass "has had two prior attorneys and now he is representing himself. You make your own judgment on that," was inappropriate but certainly not grounds for reversal.

The instruction to the jury concerning failure to produce a witness was not incorrect and moreover was not objected to.

■ The court did not abuse its discretion in allowing testimony from a plaintiff witness not listed on the pretrial order. The witness was an expert who substituted for another expert listed in the pretrial order. Defendants were informed of this change a month prior to the scheduled trial date and did not object to the witness' testimony at trial.

■ There was no error in expert witness Johnson's testifying to the absence at the scene of the fire of evidence of the existence of personal items claimed to be in the house. . The absence of valuable or sentimental items from a fire scene is circumstantial evidence that the fire was set. Moreover, Johnson's testimony was relevant to defendants' counterclaim asking punitive damages for willful refusal to pay a valid claim.

■ The trial court denied a motion to have the jury view the scene of the fire. The fire had occurred 16 months before the trial and 30 to 35 miles from the courthouse. More than 100 photographs taken shortly after the fire were introduced into evidence. Whether to allow the jury to visit the scene was in the discretion of the district court. *Johnson v. William C. Ellis & Sons Iron Works, Inc.,* 604 F.2d 950, 958 (5th Cir. 1979). *See also* Fed.R.Evid. 403.

The judgment is AFFIRMED as against John David Bass, REVERSED as against Gloria Jean Bass.